AMK Capital Corp. v Cifre Realty Corp. (2023 NY Slip Op 51291(U))

[*1]

AMK Capital Corp. v Cifre Realty Corp.

2023 NY Slip Op 51291(U)

Decided on November 27, 2023

Supreme Court, Bronx County

Gomez, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on November 27, 2023
Supreme Court, Bronx County

AMK Capital Corp., AS AGENT, OF KAPCO INDUSTRIES, INC., Plaintiff(s),

against
Cifre Realty Corp., AS MORTGAGOR; ADAM PLOTCH, AS RECORD OWNER BY REFEREE'S DEED RECORDED IN CRFN 2011000318280 UNDER CONDOMINIUM ASSOCIATION FORECLOSURE ACTION BRONX CO. INDEX 
 No. 381425/09; BOARD OF MANAGERS OF THE PARKCHESTER NORTH CONDOMINIUM ASSOCIATION; NEW YORK CITY ENVIRONMENTAL CONTROL BOARD; NEW YORK CITY PARKING VIOLATIONS BUREAU; NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE; NEW YORK CITY DEPARTMENT OF TAXATION AND FINANCE; DOMONIQUE MORRISON, Defendant(s).

Index No. 32374/17E

Counsel for Plotch: New York Litigation Group, PLLC
Counsel for MM and OGM: Herrick, Feinstein LLP

Fidel E. Gomez, J.

In this action to foreclose a mortgage and sell the real property which it encumbers, defendant ADAM PLOTCH (Plotch) moves for an order pursuant to CPLR § 5015(a)(4), inter alia, vacating the Court's judgment of foreclosure and sale dated November 26, 2018. Plotch contends, inter alia, that he was never properly served with the summons and complaint such that the Court never acquired personal jurisdiction over him. Defendants [FN1]
MAGDY MIKHAIL (MM) and OLGA GARCIA-MIKHAIL (OGM) oppose the instant motion, saliently asserting that Plotch has failed to sufficiently rebut the presumption of service established by the affidavit of service evincing service of the summons and complaint upon Plotch. 
For the reasons that follow hereinafter, Plotch's motion is granted, in part.
According to the complaint, filed on June 23, 2017, this action is for foreclosure on a mortgage and the sale of the property which secures the corresponding promissory note. The complaint alleges that on May 12, 2005, defendant CIFRE REALTY CORP. (Cifre) executed a note wherein it agreed to repay a loan totaling $50,000 to plaintiff AMK CAPITAL CORP. [*2](AMK). In order to secure the note Cifre executed a mortgage, wherein Cifre pledged the premises located at 1651 Metropolitan Avenue, Unit No.3C, Bronx, NY (3C), as security for the note. AMK assigned the note and mortgage to plaintiff Kapco Industries. On May 7, 2007, in connection with refinancing the note, Cifre executed a gap mortgage note, wherein Cifre agreed to repay a new loan totaling $75,000. In connection with the gap mortgage note, Cifre executed a gap mortgage, wherein it pledged 3C as security for the gap mortgage note. On the same day, the parties executed a consolidation and extension agreement wherein the notes and mortgages were combined to evince a single loan totaling $125,000. On July 6, 2009, the Board of Managers of the Condominium Association (Board of Managers), a condominium board at 3C elected to foreclose a lien for unpaid common charges due from Cifre and totaling $5,253.20. On July 28, 2010, a final judgment of foreclosure and sale totaling $15,043.67 was entered in favor of the Board of Managers, which indicated that when 3C was sold, such sale would be subject to the mortgage given to plaintiff. On March 7, 2011, 3C was sold at auction to Plotch for $10,000. Plotch executed a memorandum of sale, which indicated that the sale to Plotch was subject to plaintiff's mortgage, converted to a lien by virtue of the sale, and totaled $125,000. On August 9, 2011, Plotch accepted title to 3C by referee's deed, which indicated that the sale to Plotch was subject to plaintiff's mortgage, converted to a lien by virtue of the sale, and totaling $125,000. On September 26, 2011, Plotch commenced an action seeking to quiet title to 3C thereby barring plaintiff from foreclosing on its mortgage lien. The foregoing action was dismissed. The mortgage to Cifre has matured, remains unpaid, Cifre has been dissolved by the New York State Secretary of State, and plaintiff holds and owns both the note and mortgage. Based on the foregoing, plaintiff interposes a cause of action seeking to foreclose on the mortgage and sell 3C.
On May 21, 2018, the Court (Thompson, J.) granted plaintiff's application seeking the entry of default judgment against all defendants since they had failed to appear and/or interpose answers. The Court also issued an order of reference.
On November 27, 2018, the Court (Gonzalez, J.) granted plaintiff's application seeking the entry of a judgment of foreclosure and sale, authorizing the sale of 3C.
On March 28, 2019, Sergio Marquez created and filed a report, evincing that 3C was sold at auction to nonparty Jingli Qu (Qu) for $175,000.
On February 28, 2020, the Court (Gonzalez, J.) declined to sign Plotch's Order to Show Cause (OSC), seeking, inter alia, vacatur of the Court's judgment of foreclosure and sale on grounds that the Court lacked personal jurisdiction over him. The declination to sign the OSC was premised on the fact that counsel of record for Plotch had never been discharged or substituted [FN2]
.
On August 20, 2020, the Court (Gonzalez, J.), denied Plotch's pro se motion seeking relief identical to his prior OSC on grounds that the relief sought required an OSC. 
On January 5, 2023, the Appellate Division, First Department, dismissed Plotch's appeal of the Court's decision dated August 20, 2020.
On May 16, 2023, the Court (Gonzalez, J.) denied Plotch's motion seeking reargument of the Court's decision dated August 20, 2020.
On June 5, 2023, the Court (Gonzalez, J.) again declined to sign Plotch's OSC, which was identical to his prior OSC.
 Standard of Review

 CPLR § 5015(a)(4) - Lack of Jurisdiction
CPLR § 5015(a)(4) authorizes a court to vacate a judgment when the same is obtained despite a "lack of jurisdiction to render the judgment or order" (CPLR § 5015[a][4]). The proponent of a motion to vacate a judgment for want of jurisdiction must establish either that the party to whom a judgment was granted failed to obtain personal jurisdiction over him or her (Toyota Motor Credit Corp. v Hardware Lam, 93 AD3d 713, 713 [2d Dept 2012]; Hossain v Fab Cab Corp., 57 AD3d 484, 485 [2d Dept 2008]), or that the court lacked the requisite subject matter jurisdiction to render judgment (Lacks v Lacks, 41 NY2d 71, 77 [1976]; HSBC Bank USA, N.A. v Ashley, 104 AD3d 975, 976 [2d Dept 2013]).
It is well settled that the burden of establishing personal jurisdiction and proper service rests with the plaintiff (Frankel v Schilling, 149 AD2d 657, 659 [2d Dept 1989]; Torres v Corpus, 131 AD2d 463, 464 [2d Dept 1987]). Generally, an affidavit of service is prima facie evidence of proper service (Caba v Rai, 63 AD3d 578, 582-583 [1st Dept 2009]; NYCTL 1998-1 Trust Bank of NY v Rabinowitz, 7 AD3d 459, 460 [1st Dept 2004]; Scarano v Scarano, 63 AD3d 716, 716 [2d Dept 2009]; Simonds v Grobman, 277 AD2d 369, 370 [2d Dept 2000]). Accordingly, an affidavit evidencing proper service upon the defendant is sufficient to support a finding of personal jurisdiction (Skyline Agency, Inc. v Ambrose Coppotelli, Inc., 117 AD2d 135, 139 [2d Dept 1986]). Personal jurisdiction will be upheld without a traverse hearing if the only evidence submitted in opposition is a bare or conclusory denial of service (Caba at 583 [Sworn denial conclusorily stating that defendant was not served was insufficient to rebut service as evinced by the affidavit of service.]; Simonds at 370 ["The defendants failed to submit a sworn denial of service. Moreover, they did not swear to specific facts to rebut the statements in the process server's affidavits."]; Beneficial Homeowner Service Corp. v Girault, 60 AD3d 984, 984 [2d Dept 2009][The affidavit of the process server constituted prima facie evidence of proper service pursuant to CPLR 308 (2), and the defendant's bare and unsubstantiated denial of receipt was insufficient to rebut the presumption of proper service created by the affidavit of service" (internal citations omitted)]; Scarano at 716 ["Here, the defendant's affidavit was insufficient. Since he never denied the specific facts contained in the process server's affidavit, no hearing was required."]; Rabinowitz at 460 [Defendant negated service of process upon him by citing to the affidavit of service and pointing to the deficiencies therein.]; Chemical Bank v Darnley, 300 AD2d 613, 613 [2d Dept 2002]), or a minor discrepancy, such as a mistake in the description of the recipient listed in the server's affidavit (Green Point Savings Bank v Clark, 253 AD2d 514, 515 [2d Dept 1998]). Stated differently, in order to successfully assail and rebut service so as to warrant a hearing, a defendant's affidavit must specifically rebut the facts in the affidavit of service (Caba at 683; Simonds at 370; Rabinowitz at 460 ). If the denial of service is factually specific, then the court must hold a traverse hearing before deciding whether it has personal jurisdiction over the defendant (Frankel v Schilling, 149 AD2d 657, 659 [2d Dept 1989]; Powell v Powell, 114 AD2d 443, 444 [2d Dept 1985]).
At a traverse hearing, plaintiff bears the burden of establishing service upon the defendant (Chaudry Const. Corp. v James G. Kalpakis & Assoc., 60 AD3d 544, 545 [1st Dept 2009]; [*3]Schorr v Persaud, 51 AD3d 519, 519—520 [1st Dept 2008]). Moreover, at the hearing, the trial court can resolve issues of credibility, such resolution is accorded great deference, and absent a determination that it is against the weight of the evidence, cannot be disturbed on appeal (McCray v Petrini, 212 AD2d 676, 676 [2d Dept 1995]; Avakian v De Los Santos, 183 AD2d 687, 688 [2d Dept 1992]).
It is well settled that a motion pursuant to CPLR § 5015(a)(4) may be made at anytime (Wells Fargo Bank N.A. v Podeswik, 115 AD3d 207, 214 [4th Dept 2014]; Augustin v Augustin, 79 AD3d 651, 652 [1st Dept 2010] Caba at 580; Lull v Van Tassell, 171 AD3d 1155, 1156 [2d Dept 2019]; Roseboro v Roseboro, 131 AD2d 557, 557 [2d Dept 1987]; David D. Siegel, Practice Commentaries, McKinney's Cons Laws of NY, CPLR C5015:3 ["Only when the ground is the party's 'excusable default' (paragraph 1) is there a specific time limitation stated (one year) for the making of the motion. The grounds in subparagraphs 2-5 have no stated limits. . . Under paragraph 4, where want of jurisdiction is the ground, the motion may of course be made at any time. Laches can't confer on a court jurisdiction it doesn't have"]; see also Gerald Lebovits, Drafting New York Civil-Litigation Documents, 87-FEB NYSTBJ 64 [2015] ["No time limit exists if you're moving under CPLR 5015(a)(4)"]).
A judgment entered absent jurisdiction is void (Bd. of Managers of 50 W. 127th St. Condominium v Kidd, 169 AD3d 432, 433 [1st Dept 2019]; U.S. Bank, N.A. v Bernhardt, 88 AD3d 871, 872 [2d Dept 2011]; Hirsch v Syrota's Auto Wreckers, Inc., 211 AD2d 621, 622 [2d Dept 1995]; Berlin v Sordillo, 179 AD2d 717, 719 [2d Dept 1992]).
The doctrine of latches cannot defeat an application to vacate a judgment issued in the absence of personal jurisdiction (Berlin v Sordillo, 179 AD2d 717, 720 [2d Dept 1992] ["It is clear that a defense of laches could not be interposed to defeat the vacatur of a void default judgment obtained in the absence of jurisdiction."]; In re Anna M., 93 AD3d 671, 672 [2d Dept 2012] ["The Family Court denied the father's motion. Without specifically addressing the issue of personal jurisdiction, the Family Court found that the father had notice of the petitioner's request for guardianship but failed 'to take action' and 'explain his delay' in moving to vacate the order of guardianship and opposing the petitions. The Family Court therefore determined that '[e]ven if there was a defect in service,' the 'doctrine of laches operate[d] to bar the father from vacating the guardianship order.' This was error."];

CPLR § 3211(a)(8) - Dismissal for Lack of Personal Jurisdiction
It is well settled that a motion to dismiss for lack of personal jurisdiction pursuant to CPLR § 3211(a)(8) will be granted when it is established that service of process upon a defendant was improper (Feinstein v Bergner, 48 NY2d 234, 234-235 [1979] [Court dismissed complaint for lack of personal jurisdiction when defendant was served with process by nail and mail service at an address where defendant no longer resided.]; West v Doctor's Hospital, 198 AD2d 92, 92 [1st Dept 1993] [Court granted motion to dismiss for want of personal jurisdiction, holding that service was improper when summons and complaint were left with someone on the 14th floor, rather than the 8th floor - the floor where defendant maintained his office.]; O'Connell v Post, 27 AD3d 630, 630-631[2d Dept 2006] [Court granted motion to dismiss for lack of personal jurisdiction holding that service was improper when plaintiff resorted to nail and mail service without attempting to serve defendant at his place of business]).
Notably, CPLR § 3211(e) states that
[a]t any time before service of the responsive pleading is required, a party may move on one or more of the grounds set forth in subdivision (a), and no more than one such motion shall be permitted. . . . an objection that the summons and complaint, summons with notice, or notice of petition and petition was not properly served is waived if, having raised such an objection in a pleading, the objecting party does not move for judgment on that ground within sixty days after serving the pleading, unless the court extends the time upon the ground of undue hardship. . . . The papers in opposition to a motion based on improper service shall contain a copy of the proof of service, whether or not previously filed. . . [and] An objection based upon a ground specified in paragraph eight or nine of subdivision (a) is waived if a party moves on any of the grounds set forth in subdivision (a) without raising such objection or if, having made no objection under subdivision (a), he or she does not raise such objection in the responsive pleading.
Thus, the failure to raise the absence of personal jurisdiction in the first of either defendant's answer or a motion to dismiss, whichever comes first, results in the waiver of such defense (U.S. Bank N.A. v Pepe, 161 AD3d 811, 812 [2d Dept 2018]; Am. Home Mortg. Servicing, Inc. v Arklis, 150 AD3d 1180, 1181 [2d Dept 2017]; McGowan v Hoffmeister, 15 AD3d 297, 297 [1st Dept 2005]). To be sure, in Addesso v Shemtob (70 NY2d 689 [1987]), the defendant moved to dismiss that action on grounds that the complaint failed to state a cause of action, but did not move to dismiss based on the absence of personal jurisdiction (id. at 690). Thereafter, while defendant raised the absence of personal jurisdiction in his answer, the court nevertheless held that defendant had waived such defense because "the basis for the objection of lack of personal jurisdiction—improper service of the summons and the original complaint— should have been made in the earlier CPLR 3211 (a) motion to dismiss" (id. at 690). Assuming an objection to personal jurisdiction is raised in the defendant's answer - if it is the first responsive pleading, where no pre-answer motion has been made - the failure to move for dismissal based on the absence of personal jurisdiction within 60 days of service of the answer results in waiver of the foregoing defense (Deutsche Bank Natl. Tr. Co. v Acevedo, 157 AD3d 859, 861 [2d Dept 2018]; NYRU, Inc. v Forge Rest., LLC, 92 AD3d 511, 511 [1st Dept 2012]; Wiebusch v Bethany Mem. Reform Church, 9 AD3d 315, 315 [1st Dept 2004]; Worldcom, Inc. v Dialing Loving Care Inc., 269 AD2d 159, 159 [1st Dept 2000]).

 Discussion
Plotch's motion seeking vacatur of the judgment of foreclosure and sale, vacatur of the deeds resulting therefrom and dismissal of this action is granted to the extent of scheduling a traverse hearing to determine whether Plotch was duly served with the summons and complaint in this action. Significantly, Plotch negates the factual allegations of service within the affidavit of service filed by plaintiff in this action and as such, creates a question of fact with respect to service that can only be resolved at a hearing.
In support of his motion, Plotch submits an affidavit wherein he discusses the relevant procedural history in this action and incorporates by reference several documents. Plotch states that when this action was commenced, he was the sole and exclusive owner of 3C, having acquired the same by a deed issued as a result of an action by the Board of Managers at 3C. Plotch has no relationship to plaintiff in this action and is aware that 3C was sold to Qu for $177,450 by the referee in this action. Thereafter, 3C was sold by Qu to MM and OGM for [*4]$245,000. Plotch states that since 2003, he has both resided and maintained his business at the premises located at 95 West 95 Street, Unit 29E, New York, NY (29E). Plotch operates several limited liability companies from 29E and he is the sole member of all those companies. Plotch states that he was never served with the summons and complaint. Specifically, he states that he was never handed the summons and complaint, that the summons and complaint were never left with anyone of suitable age and discretion, that the same were not left with his agent, and that the same were never affixed to his door. The affidavit of service, by Gerard Scully (Scully) states that the on August 2, 2017, the summons and complaint were left at 29E with Plotch's wife, a female, 55 years old, with covered hair, white skin, 5'4"-5'7" tall and weighing 125-149lbs. However, Plotch states that he is not and never has been married, does not have a wife matching the description in the affidavit of service, that he is 5'10" and at that time weighed 210lbs, and that no one matching the description in the affidavit of service worked or resided at 29E on August 2, 2017. Plotch further states that no one matching the description in the affidavit ever gave him the summons and complaint. Lastly, Plotch states that there is a woman who matches the description in the affidavit on his floor, but that he does not know her nor has she ever been inside 29E. The woman has never worked for Plotch either. Plotch received a copy of the summons and complaint by mail. The envelope bore a return address for Alstate, who Plotch determined was a process service agency. The envelope was addressed to Plotch and listed him as "Record Owner by Referee's Deed Recorded in Crfn 2011000318280 under Condominium Association Foreclosure Action Bronx Co. Index No. 381425/09 95 West 95th Street Apt. 29E, New York, NY 10025."
Plotch submits the deeds to which he referred. The first deed is the referee's deed, dated March 28, 2019. The deed evinces that it was issued after the sale of 3C pursuant to the judgment issued in this action. The deed conveys 3C to Qu. The second deed is dated August 20, 2019 and evinces that Qu sold 3C to MM and OGM.
Plotch submits the affidavit of service evincing service of the summons and complaint upon him. The affidavit states that on August 2, 2017, Plotch was served with the summons and complaint when the same were left at 29E, Plotch's residence, with Mrs. Plotch, his wife, who refused to provide a first name. The person served is described as a white female, 55 years old, with covered hair, approximately 5'4"-5'7" tall, and weighing 125-149lbs. The affidavit states that on August 9, 2017, the summons and complaint were mailed to Plotch at 29E, his residence, listing him as "Record Owner by Referee's Deed Recorded in Crfn 2011000318280 under Condominium Association Foreclosure Action Bronx Co. Index No. 381425/09 95 West 95th Street Apt. 29E, New York, NY 10025," in an envelope marked personal and confidential.
Personal Jurisdiction
Based on the foregoing, Plotch rebuts the service established by the affidavit of service with sufficient specificity thereby raising an issue of fact with regard to service, which can only be resolved at a traverse hearing.
As noted above, the proponent of a motion to vacate a judgment for want of jurisdiction must establish either that the party to whom a judgment was granted failed to obtain personal jurisdiction over him or her (Toyota Motor Credit Corp. at 713; Hossain at 485, or that the court lacked the requisite subject matter jurisdiction to render judgment (Lacks at 77; HSBC Bank USA, N.A. at 976). To that end, an affidavit of service is prima facie evidence of proper service [*5](Caba at 582-583; NYCTL 1998-1 Trust Bank of NY at 460 ; Scarano at 716; Simonds at 370). Accordingly, an affidavit evidencing proper service upon the defendant is sufficient to support a finding of personal jurisdiction (Skyline Agency, Inc. at 139). Personal jurisdiction will be upheld without a traverse hearing if the only evidence submitted in opposition is a bare or conclusory denial of service (Caba at 583; Simonds at 370; Beneficial Homeowner Service Corp. at 984; Scarano at 716; Rabinowitz at 460; Chemical Bank at 613), or a minor discrepancy, such as a mistake in the description of the recipient listed in the server's affidavit (Green Point Savings Bank at 515). Stated differently, in order to successfully assail and rebut service so as to warrant a hearing, a defendant's affidavit must specifically rebut the facts in the affidavit of service (Caba at 683; Simonds at 370; Rabinowitz at 460 ). If the denial of service is factually specific, then the court must hold a traverse hearing before deciding whether it has personal jurisdiction over the defendant (Frankel at 659; Powell at 444).
Here, the affidavit of service states that Plotch was served at 29E, which the affidavit of service states is his residence, when a copy of the summons and complaint were left with his wife and when the foregoing documents were mailed to 29E in an envelope marked personal and confidential. Thus, per the affidavit, Plotch was served pursuant to CPLR § 308(2) (id. ["Personal service upon a natural person shall be made by any of the following methods . . . by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served."]), and therefore, the affidavit is prima facie evidence of service upon Plotch. However, in his affidavit, Plotch denies that he was ever served and specifically asserts that he is not married, that no one fitting the description of the person served resided at 29E, and that no one fitting the foregoing description ever gave him the summons and complaint. Accordingly, Plotch sufficiently rebuts service thereby warranting a traverse hearing to resolve the issue of personal jurisdiction. Such determination will determine whether the judgment of foreclosure and sale will be vacated.
Additionally, the hearing will also determine whether this action will be dismissed pursuant to CPLR § 3211(a)(8). As noted above, it is well settled that a motion to dismiss for lack of personal jurisdiction pursuant to CPLR § 3211(a)(8) will be granted when it is established that service of process upon a defendant was improper (Feinstein at 234-235; West at 92; O'Connell at 630-631). Here, as already discussed, whether service upon Plotch was proper or was effectuated at all must be determined at a traverse hearing.
Contrary to Plotch's assertion, the record does not obviate a traverse hearing and, as urged, the immediate vacatur of the judgment of foreclosure and sale and dismissal of this action. To be sure, Plotch contends that the affidavit of service states that the summons and complaint were mailed to Plotch and listed him as "Record Owner by Referee's Deed Recorded in Crfn 2011000318280 under Condominium Association Foreclosure Action Bronx Co. Index No. 381425/09 95 West 95th Street Apt. 29E, New York, NY 10025." Thus, Plotch contends that by listing Plotch as a party in this action and referencing his connection with the action by the Board [*6]of Managers, the service of the summons and complaint violated CPLR § 308(2) rendering it improper as matter of law. Plotch's assertion is without merit. Significantly, it is well settled that the requirement imposed by CPLR § 308(2) requiring that the defendant be mailed a copy of the summons and complaint after service on someone of suitable age and discretion in "an envelope bearing the legend 'personal and confidential' and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served," only applies when the mailing is sent to a defendant's business (Bezoza v Bezoza, 83 AD3d 578, 579 [1st Dept 2011] ["Further, the requirement that the summons and complaint be mailed in an envelope bearing the legend personal and confidential and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, pertains only to mailings made to a defendant's actual place of business, and not to the defendant's residence."]; Ridgeway v St. John's Queens Hosp., 199 AD2d 490, 491 [2d Dept 1993] ["However, in this case, the summons and complaint was mailed to the appellant's last known residence rather than to his actual place of business. Thus, the fact that the envelope bore the return address of the plaintiff's attorney did not render the mailing defective."]). Here, Plotch's own affidavit establishes that 29E was both his home and his place of business. Thus, even if the markings on the envelope he received violated CPLR § 308(2) by indicating that the envelope's contents were a communication from an attorney, because he was being served at home, the envelope did not need to be marked personal and confidential nor did it have to refrain from bearing any indicia that the contents were from an attorney.
To the extent that MM and OGM oppose the instant motion, asserting that Plotch fails to sufficiently rebut service of the summons and complaint upon him, such contention is also without merit.
In support of their motion, to the extent relevant, MM and OGM submit two documents. The first is a document from 
https://www.cubawithbatia.com/, a website which evinces that nonparty Batia Plotch (Batia) runs a tourism business, which provides guided tours to Cuba. The second is a document from the New York State Department of State, which evinces that Batia is the principal of Global Gallop, LLC (Global), and that 29E is Global's principal place of business.
Counsel for MM and OGM also asserts that a public record's search evinces that Batia was born in 1948 and along with Stephen Plotch, also resides at 29E.
Based on the foregoing, MM and OGM contend Plotch's failure to assert that there was no one at 29E on August 2, 2017, the date service upon him was effectuated is tantamount to a bare denial of service, and thus, tantamount to a failure to rebut service. Furthermore, MM and OGM contend that since Batia resides at 29E, service upon her is consistent with the description within the affidavit of service. Neither of these contentions are availing. First, here, Plotch's affidavit, as discussed above, specifically addresses and rebuts the assertion in the affidavit of service, namely, that the person upon whom the summons and complaint was served is not and never was his wife, and did not and never resided at 29E. This is sufficient to rebut service, where as here, there is no allegation that the summons and complaint were handed to Plotch, but to someone alleged to be his wife. By contrast, if the affidavit of service had, in fact, alleged that either Plotch or a man had been served with the summons and complaint, then the failure to deny [*7]that he was home on the date in question, would be fatal to Plotch's burden. Second, while it is plausible that it was Batia who was, in fact, served with the summons and complaint at 29E, surmise and conjecture are no substitute for actual evidence. Significantly, beyond counsel's bare assertions regarding Batia's age, where she resides and where she operated a business, the only documentary evidence proffered merely evinces that Batia operates a tourism business and that it might be the same associated with Global, an LLC with a principal place of business at 29E. The foregoing is a far cry from evidence demonstrating that Batia was served with process and, as intimated, misled the process server into believing that she was Plotch's wife. At best these facts merely bolster the Court's conclusion that the issue of service cannot be resolved absent a traverse hearing.
To the extent that MM and OGM assert that the instant motion should be denied because Plotch fails to establish a reasonable excuse for failing to answer and a meritorious defense to this action, such assertion is without merit. It appears that MM and OGM conflate the requirements of an application pursuant to CPLR § 5015(a)(4), which is the motion made by Plotch, with one pursuant to CPLR § 5015(a)(1), which is not the relief sought by Plotch.
When a defendant seeks vacatur of an order or judgement pursuant to CPLR §5015(a)(1), on grounds that it was obtained upon default, the moving party must demonstrate a reasonable excuse for the default and the legal merit of the claim or defense asserted (M-Dean Realty Corp., v General Security Insurance Company, 6 AD3d 169, 171 [1st Dept 2004]; Goldman v Cotter, 10 AD3d 289, 291 [1st Dept 2004]). However, where as here, vacatur is sought for want of jurisdiction, the burden is altogether different and has been explained above. Contrary to MM and OGM's assertion, Plotch was therefore not required to proffer an excuse for his default nor a meritorious defense to this action. 
Similarly, MM and OGM's assertion that the doctrine of latches warrants denial of this motion stems from the conflation of the instant motion to one made pursuant to CPLR § 5015(a)(1). To be sure, the doctrine of latches cannot defeat an application to vacate a judgment pursuant to CPLR § 5051(a)(4), alleged to have been issued in the absence of personal jurisdiction (Berlin at 720; In re Anna M. at 672).
Vacatur of Judgment of Foreclosure and Sale for the Failure to Have a Valid Notice of Pendency Prior to the Entry of the Final Judgment
Plotch's motion seeking to vacate the judgment of foreclosure and sale because it was entered absent a valid notice of pendency is denied. Significantly, prevailing law does not uniformly require vacatur under these circumstances.
Pursuant CPLR § 6501, in an action where a judgment "would affect the title to, or the possession, use or enjoyment of, real property", "[a] notice of pendency may be filed." The notice of pendency provides "constructive notice, from the time of filing of the notice only, to a purchaser from, or incumbrancer against, any defendant named in a notice of pendency (id.). The purpose of such notice is to ensure that the property - the object of the law suit - is not alienated by a defendant during the pendency of the action (Israelson v Bradley, 308 NY 511, 516 [1955] ["The purpose of the grant of the privilege (conferred by a notice of pendency) was to prevent the acquisition pendente lite of an interest in the subject-matter of the suit, to the prejudice of the plaintiff because otherwise there would be no end of any suit; the justice of the court would be evaded, and great hardship and inconvenience to the suitor would be necessarily introduced" [*8](internal quotations omitted).]; Hailey v Ano, 136 NY 569, 576 [1893] ["(A notice of pendency) prevented the acquisition pendente lite of an interest in the subject-matter of the suit, to the prejudice of the plaintiff, because otherwise (in words already quoted) there would be no end of any suit; the justice of the court would be evaded, and great hardship and inconvenience to the suitor would be necessarily introduced." (Internal quotation marks omitted)]; Mechanics Exch. Sav. Bank v Chesterfield, 34 AD2d 111, 113 [3d Dept 1970] ["(A notice of pendency's) function is to carry out the public policy that a plaintiff's action shall not be defeated by an alienation of the property during the course of the lawsuit; otherwise, there would be no end of any suit, the justice of the court would be evaded and great difficulty would confront a suitor."]). 
A notice of pendency must be filed "before or after the service of a summons and at any time prior judgment" (CPLR § 6511[a]). If the notice of pendency is filed prior to the service of the summons, however, it is only effective if "within thirty days after filing, a summons is served upon the defendant or first publication of the summons against the defendant is made pursuant to an order and publication is subsequently completed" (CPLR § 6512). In an action seeking to foreclose a mortgage and sell the property encumbered thereby, a notice of pendency must be filed at least 20 days prior to the issuance of a final judgment directing the sale of the property (RPAPL § 1331 ["The plaintiff, at least twenty days before a final judgment directing a sale is rendered, shall file in the clerk's office of each county where the mortgaged property is situated a notice of the pendency of the action, which shall specify, in addition to other particulars required by law, the date of the mortgage, the parties thereto and the time and place of recording."]). Accordingly, in a foreclosure action, prevailing law holds that the filing of a notice of pendency is a prerequisite to the entry of a final judgment (Isaias v Fischoff, 37 AD2d 934, 934 [1st Dept 1971] ["Thus, we perceive that the filing of a lis pendens is requisite to the entry of a final judgment."]; Robbins v Goldstein, 36 AD2d 730, 731 [2d Dept 1971]).
Notably, however, compliance with CPLR § 1331 is merely an element of an action for foreclosure on a mortgage and not a jurisdictional defect (Maspeth Fed. Sav. and Loan Ass'n v Sloup, 123 AD3d 672, 674 [2d Dept 2014] ["However, the notice of pendency requirement pursuant to RPAPL 1331 was an element of the plaintiff's cause of action, not a jurisdictional defect" (internal quotation marks omitted).]; Slutsky v Blooming Grove Inn, Inc., 147 AD2d 208, 212 [2d Dept 1989]). With respect to the consequences of failing to file a notice of pendency or not having one in place when a final judgment is entered, the law is not settled. There are no cases in the First Department addressing this issue and the Appellate Division, Second Department has issued diverging opinions. Specifically, in the Second Department, there are cases holding that the failure to seek vacatur of a judgment entered absent compliance with RPAPL § 1331 is within a reasonable time precludes vacatur (Amtrust-NP SFR, Venture, LLC v Emmel, 140 AD3d 993, 994 [2d Dept 2016] ["Emmel's unreasonable delay in filing her motion, inter alia, to vacate the judgment of foreclosure and sale on the ground that the plaintiff failed to comply with the provisions of RPAPL 1331 warranted denial of that motion."]; Maspeth Fed. Sav. and Loan Ass'n at 674 ["Accordingly, the fact that Tracey failed to move for relief within a reasonable time after entry of the judgment of foreclosure and sale warranted the denial of her motion."]). Other cases hold that a judgment issued absent compliance with RPAPL § 1331 must always be vacated (NYCTL 1999-1 Tr. v Chalom, 47 AD3d 779, 780 [2d Dept 2008] [Final judgment vacated when "there was no valid notice of pendency filed at least 20 days prior to the [*9]entry of the final judgment in this matter" (id. at 780). In Deutsche Bank Nat. Tr. Co. v Brown (133 AD3d 563 [2d Dept 2015]), however, the court held that since the failure to comply with RPAPL § 1331 is curable, vacatur on that ground is never warranted (id. at 563 ["Even assuming, without deciding, that the judgment of foreclosure and sale does in fact violate RPAPL 1331, this would mean that the plaintiff failed to establish an element of its cause of action, but the defect would neither deprive the court of its subject matter jurisdiction within the meaning of CPLR 5015(a)(4), nor preclude the plaintiff from simply filing a new notice of pendency and applying for a new default judgment after 20 days, in compliance with RPAPL 1331. Moreover, under the circumstances presented, the alleged violation of RPAPL 1331 is not a ground for vacatur in the interest of justice" (internal citations omitted).]).
This Court sides with Deutsche Bank Nat. Tr. Co., and holds that the failure to file a notice of pendency, or where as here, the same had lapsed, does not warrant vacatur of the final judgement. RPAPL, notwithstanding, since as noted above, the purpose of a notice of pendency is to prevent a defendant from thwarting the object of an action by transferring the property to an unwitting third-party (Israelson at 516; Hailey at 576; Mechanics Exch. Sav. Bank at 113), the failure by plaintiff, whose interest the notice is designed to protect, ought not warrant the vacatur a judgment based on that ground. Indeed, it is a plaintiff who, in the absence of a notice of pendency, assumes the risk that the property at issue could be sold to another, in good faith and for value, such that it is irretrievably lost.
Here, the record evinces that the notice of pendency was filed on June 23, 2017, the same day as the summons and complaint. Thus, pursuant to CPLR § 6512, to be effective, service upon defendants was required within 30 days of the filing of the notice of pendency. Here, while all other defendants were served with the summons and complaint in July 2017 and within 30 days after the notice of pendency was filed, Plotch was not served until August 2, 2017, more than 30 days after the notice of pendency was filed. Thus, the notice of pendency was never valid when the Court entered the judgment of foreclosure and sale. However, as noted above, this does not, as urged by Plotch, require vacatur of the judgment of foreclosure and sale (Deutsche Bank Nat. Tr. Co. at 563). 
Void/Voidable Deeds and Good Faith Purchasers of Real Property
Plotch's application seeking, upon vacatur of the judgment of foreclosure and sale, vacature of the deeds that conveyed 3C to Qu and then to MM and OGM, is conditionally granted.
In cases where a party seeks to collaterally attack a deed and set it aside, there is a distinction, critical to any such application, between a deed that is void and one that is voidable.
Significantly a deed that is void cannot confer title to one who acquires property by virtue of such deed (Faison v Lewis, 25 NY3d 220, 224 [2015] ["[A] forged deed [is] void at its inception."]; Marden v Dorthy, 160 NY 39, 56 [1899] ["Void things are as no things."]; Weiss v Phillips, 157 AD3d 1, 10 [1st Dept 2017] [" A void real estate transaction is one where the law deems that no transfer actually occurred."]; ABN AMRO Mortg. Group, Inc. v Stephens, 91 AD3d 801, 803 [2d Dept 2012] ["If a document purportedly conveying a property interest is void, it conveys nothing, and a subsequent bona fide purchaser or bona fide encumbrancer for value receives nothing."]). Accordingly, a void deed is incapable of conveying the very property it purports to convey and therefore, it cannot be enforced by a subsequent bonafide purchaser [*10](Marden at 56; Faison at 225; Weiss at 10; ABN AMRO Mortg. Group, Inc. at 803). In other words, a void deed is void ab initio (AMRO Mortg. Group, Inc. at 803; Cruz v Cruz, 37 AD3d 754 [2d Dept 2007]), or as the court in Marden aptly stated, "[i]t is legally impossible for any one to become a bona fide purchaser of real estate, or a purchaser at all, from one who never had any title" (id. at 56). Notably, the ownership interests of a subsequent bona fide purchaser or encumbrancer for value are not protected when said purchaser derives title from a void deed (Weiss at 1; Ameriquest Mortg. Co. v Gaffney, 41 AD3d 750, 751 [2d Dept 2007] ["However, one consequence of a void deed would be that Lafayette cannot claim the protected status of bona fide purchaser because nothing would have been conveyed to it."]; Yin Wu v Wu, 288 AD2d 104, 105 [1st Dept 2001] ["A forged deed is void and conveys no title. A person cannot be a bona fide purchaser through a forged deed since the forger has no title to convey in the first instance" (internal citations and quotation marks omitted).]).
By contrast, a voidable deed can, in fact, convey title unless and until it is set aside, such that property transferred by a voidable deed to a purchaser in good faith, actually conveys the property (Marden at 50 ["The deed is not void, but voidable, and, until set aside, it has the effect of transferring the title to the fraudulent grantee, and the latter, being thus clothed with all the evidences of good title, may incumber the property to a party who becomes a purchaser in good faith."]; Gerlitz v Biddle, 202 AD3d 762, 764 [2d Dept 2022] ["A voidable deed, until set aside has the effect of transferring the title to the fraudulent grantee, and being thus clothed with all the evidences of good title, may incumber the property to a party who becomes a purchaser in good faith" (internal quotation marks omitted).]; Faison at 225 ["Unlike a forged deed, which is void initially, a voidable deed, until set aside, has the effect of transferring the title to the fraudulent grantee, and being thus clothed with all the evidences of good title, may incumber the property to a party who becomes a purchaser in good faith" (internal quotation marks omitted).]).
Generally, forged deeds and/or deeds executed under false pretenses are void (Weiss at 11; ABN AMRO Mortg. Group, Inc. at 803; Cruz at 754; Wu at 105). By contrast, a deed procured by fraud is merely voidable (Faison at 224; Marden at 50; Weiss at 11; [1st Dept 2017]). Similarly, "deeds and contracts of a person of unsound mind, who has not been judicially declared incompetent, are voidable, not absolutely void" (Smith v Ryan, 191 NY 452, 455 [1908]). 
Notably, however, prevailing law holds that a deed issued upon a judgment where the court lacked personal jurisdiction to issue such judgment is void (U.S. Bank, N.A. at 872 ["A judgment rendered without jurisdiction is void. Further, when a deed is issued in execution upon such a void judgment, that deed is similarly void."]; see Bd. of Managers of 50 W. 127th St. Condominium at 433; Hirsch v Syrota's Auto Wreckers, Inc. at 622; Berlin at 719). Significantly, deeds which subsequently transfer a property, when initially premised on a deed issued without jurisdiction, are also void (McCracken v Flanagan, 141 NY 174, 178 [1894]). In McCracken, the plaintiff claimed to be the owner of real property, which he acquired by will upon the death of a relative (id. at 176-177). Plaintiff and decedent had initially acquired the property from nonparty Kahle, the original owner (id. at 177-176). Defendant likewise claimed to be the owner of the foregoing property, having acquired it from nonparty Flanagan (id. at 177). Defendant's ownership interest arose from an action initiated against Kahle by nonparty Cartan (id. at 177). Upon Kahle's default in that action, Cartan acquired the instant property prior to the conveyance [*11]by Kahle to plaintiff and decedent via a Sheriff's deed incident to the judgment against Kahle (id. at 177). Subsequent to the conveyance by Kahle to plaintiff, Carten transferred the property to a nonparty, who then transferred the property to defendant (id. at 177). Plaintiff then began an ejectment action against defendant and the court held that defendant, having no ownership interest in the property should be ejected (id. 177-178). In so holding, the court stated that since Cartan's judgment against Kahle was devoid of personal jurisdiction, Kahle never lost title to the property (id. at 178). Thus, the property was properly conveyed to plaintiff and decedent (id. at 178). Lastly, with respect to the deeds issued against Kahle upon his default and the subsequent transfers of the property, the court held that they were void and did not convey title (id. at 178 ["It was there held that the affidavit upon which was granted the order of publication of the summons in the action of Cartan and others against Kahle, was insufficient to give the judge jurisdiction to make the order; that the judgment entered against Kahle by default, and the deed upon the sale of his property under that judgment were void, and that, therefore, the defendants in this action, claiming under that deed, had no title whatever to the land in dispute."]).
It is well settled that a bonafide purchaser or encumbrancer for value of real property is protected in his or her title to real property unless he or she had previous notice of fraud by the seller (Karan v Hoskins, 22 AD3d 638, 638 [2nd Dept. 2005]; Chen v Geranium Dev. Corp., 243 AD2d 708, 709 [2d Dept 1997]; Berger v Polizzotto, 148 AD2d 651, 652 [2d Dept 1989]). Hence, in order to protect his title, a purchaser must establish that he purchased property for valuable consideration and that he did not purchase the same with knowledge of any facts which would have led a reasonably prudent purchaser to make inquiry (Chen at 652-653; Nethaway v Bosch, 199 AD2d 654, 654 [3d Dept 1993]). If the purchaser purchases property with knowledge of prior interest or equity in the property or with knowledge of facts which would lead a reasonably prudent purchaser to make inquiries concerning the same, then the purchaser is not bonafide and his title is not protected (United Matura Realty, Inc. v Reade Indus., Inc., 155 AD2d 660, 662 [2d Dept 1989]; United Matura Realty, Inc. v Reade Indus., Inc., 155 AD2d 660, 662 [2d Dept 1989] ["In the instant case, however, there is evidence that the defendants Piticu and Kerman expressly advised the defendant Reade that they were interested in purchasing the subject property but that any deal would be contingent upon cancellation of the prior contract and the return of any downpayment to the plaintiff contract vendee. There is also evidence that the defendants Piticu and Kerman utilized a title report prepared by Cooke Abstract Corp. which gave notice of the plaintiff's prior contractual rights with respect to the subject property. In view of the fact that Piticu and Kerman had actual knowledge of the plaintiff's interest and since actual knowledge of a defect in title impeaches the good faith of the subsequent purchaser" (internal quotation marks omitted).]; Nethaway at 654 [In an action for declaratory judgment seeking to determine ownership of real property, the court denied plaintiff's application seeking summary judgment, concluding that questions of fact with respect to "whether plaintiff purchased the property for valuable consideration without knowledge of facts that would lead a reasonably prudent purchaser to make inquiry" precluded a finding that she was a good faith purchaser of the property."]; Chen at 709 ["Here, the appellants do not dispute that they had actual knowledge of the prior contracts between Geranium Development and the plaintiff for the sale of the subject parcels. Indeed, the appellants' contract of sale with Geranium Development was expressly conditioned upon the cancellation of such contracts. However, despite this knowledge, the [*12]appellants merely accepted, without any proof or inquiry, independent or otherwise, a bare representation prior to their closing that the contracts had been cancelled. Thus, regardless of any issue as to recordation, the Supreme Court did not err in finding that the appellants had not met their burden of proving that they were good faith purchasers for value, and in denying their motion to set aside the plaintiff's judgment of foreclosure."]).
This rule was articulated long ago in Anderson v Hernandez 152 (NY 285 [1897], wherein the court stated that
[t]he rule, as it was early laid down in the case of Williamson v. Brown (15 NY 354, has not been departed from in any subsequent case, of which I am aware. That was that, where a purchaser of land has knowledge of any facts sufficient to put him upon inquiry as to the existence of some right, or some title, in conflict with that he is about to acquire, he is presumed, either to have made the inquiry and ascertained the extent of such prior right, or to have been guilty of a degree of negligence equally fatal to his claim to be considered a bona fide purchaser. Many subsequent cases in this court have rested upon the rule in Williamson v. Brown. But all are to the point that a purchaser for a valuable consideration is entitled to be protected in his title and, in the absence of actual notice of fraud, it is necessary that the facts and circumstances, relied upon to charge him with knowledge of the fraud, should be of a character equivalent to notice. If the facts within the knowledge of the purchaser are of such a nature, as, in reason, to put him upon inquiry, and to excite the suspicion of an ordinarily prudent person and he fails to make some investigation, he will be chargeable with that knowledge which a reasonable inquiry, as suggested by the facts, would have revealed
(id. at 293).
While briefly noted above, it bears reiterating that a person cannot be a bonafide purchaser or encumbrancer for value if he obtains title via a forged deed, since a forged deed is void and conveys no title (Wu at 105; Karan at 638-639). Again, this is because a forged deed is void ab initio (Rosen v. Rosen, 243 AD2d 619 [2d Dept. 1997]; Filowick v Long, 201 AD2d 893, 893 [4th Dept. 1994]; Kraker v Roll, 100 AD2d 424, 430-431 [2d Dept. 1984]). Thus, since a deed issued upon a judgment where such judgment was issued in the absence of personal jurisdiction is void (U.S. Bank, N.A. at 872; Bd. of Managers of 50 W. 127th St. Condominium at 433; Hirsch at 622; Berlin at 719), a person cannot be a bonafide purchaser or encumbrancer for value if he obtains title via such a deed. Indeed, deeds which subsequently transfer a property when initially premised on a deed issued without jurisdiction, are also void, and a good faith purchaser for value is not protected thereby (McCracken at 178).
Here, if the Court determines that it never acquired personal jurisdiction over Plotch and vacates the judgment of foreclosure and sale, the referee's deed would have to necessarily be vacated as void (U.S. Bank, N.A. at 872; Bd. of Managers of 50 W. 127th St. Condominium at 433; Hirsch at 622; Berlin at 719). Again, a deed that is void cannot confer title on to one who acquires property by virtue of such deed (Faison at 224; Marden at 56; ABN AMRO Mortg. Group, Inc. at 803). Thus, a void deed is incapable of conveying the very property it purports to convey and therefore, it cannot be enforced by a subsequent bonafide purchaser (Marden at 56; Faison at 225; Weiss at 10; ABN AMRO Mortg. Group, Inc. at 803). This is because "[i]t is legally impossible for any one to become a bona fide purchaser of real estate, or a purchaser at [*13]all, from one who never had any title" (Marden at 56). Under such a a scenario, the ownership interests of a subsequent bona fide purchaser or encumbrancer for value is not protected (Weiss at 1; Ameriquest Mortg. Co. at 751; Wu at 105). 
The foregoing is true although as urged, with respect to 3C, MM and OGM are good faith purchasers for value. To be sure, with respect to 3C, since it is well settled that a bonafide purchaser or encumbrancer for value of real property is protected in his or her title to real property unless he or she had previous notice of fraud by the seller (Karan at 638; Chen at 709; Berger at 652), on this record, it is clear that Qu who purchased 3C at an auction duly authorized by the Court and then MM and OGM, who purchased 3C from Qu after he lawfully acquired it, are all good faith purchasers for value. Indeed, a purchaser must establish that he purchased property for valuable consideration and that he did not purchase the same with knowledge of any facts which would have led a reasonably prudent purchaser to make inquiry (Chen at 652-653; Nethaway at 654), and here the record establishes that Qu, MM, and OGM paid significant money for 3C and had no reason to believe that there was a cloud on 3C's title. Indeed, the cloud on 3C's title does not yet exist since the issue of personal jurisdiction has yet to resolved by this Court. However, and unfortunately, as noted above, a good faith purchaser for value is not protected in his/her ownership rights when a deed is void (Faison at 224; Marden at 56; ABN AMRO Mortg. Group, Inc. at 803).
Accordingly, if as was the case in McCracken, this Court vacates the judgment which gave rise to the referee's deed conveying 3 to Qu for want of personal jurisdiction, Qu's deed, which conveyed 3C to MM and OGM would be premised on a void deed. Therefore, even if Qu was a good faith good faith purchaser for value, the referee's deed conveyed nothing to him such that the deed by Qu conveying 3C to MM and OGM likewise failed to convey anything to them [FN3]
. It is hereby
ORDERED that caption be amended to add MM and OGM as defendants. It is further
ORDERED that all parties appear for a traverse hearing on February 26, 2024 at 10am. It is further
ORDERED that Plotch serve a copy of this Decision and Order upon all parties with Notice of Entry upon within 30 days hereof.
This constitutes this Court's decision and Order.
Dated: 11/27/23
________________________________
HON. FIDEL E. GOMEZ, JSC

Footnotes

Footnote 1: Although the Court (Gonzalez, J.), in its decision dated May 16, 2023, granted MM and OGM's application to intervene as defendants in this action, the caption has never been amended to reflect the same. 

Footnote 2: Apparently, the Court (Gonzalez, J.) was under the mistaken impression that Plotch, who was then pro se, had prior counsel.

Footnote 3: As urged by MM and OGM, it bears noting that even if Plotch is successful, the inequity resulting therefrom, namely the divestment of MM and OGM's title to 3C, which they acquired for a significant sum of money, could conceivably give rise to an action where MM and OGM could seek to re-foreclose on 3C on a theory of equitable subrogation. While the Court shall not determine the viability of this claim on this motion, it nevertheless bears noting that "[w]here property of one person is used in discharging an obligation owed by another or a lien upon the property of another, under such circumstances that the other would be unjustly enriched by the retention of the benefit thus conferred, the former is entitled to be subrogated to the position of the obligee or lien-holder" (King v Pelkofski, 20 NY2d 326, 333 [1967]; Matter of Benedictine Hosp. v Glessing, 90 AD3d 1383, 1386 [3d Dept 2011]). The foregoing, known as equitable subrogation "encompasses every instance where one party pays a debt of another under compulsion or for the protection of some interest" (Cohn v Rothman-Goodman Mgt. Corp., 155 AD2d 579, 580 [2d Dept 1989]; see Gerseta Corp. v Equit. Tr. Co. of New York, 241 NY 418, 425 [1926]). Accordingly, since Plotch acquired 29E subject to plaintiff's substantial mortgage lien and such debt was satisfied by Qu, to whom MM and OGM paid a significant sum, Plotch has never paid anything toward the satisfaction of plaintiff's lien. As such, there is certainly a colorable claim by MM and OGM for equitable subrogation.